IsmAEL RIVERA, Plaintiff and Appellee, *v.* ELOÍSA CASIANO DE TORO ET AL., Defendants and Appellants.

No. 9485. Argued November 3, 1947.—Decided February 13, 1948.

*Enrique Báez García* for appellants. *Ildefonso Freyre* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

Ismael Rivera, an insular policeman, brought, in the District Court of Mayagüez, an action for damages and alleged that on October 6, 1945, in the discharge of the duties of his office, he went with other police officers to execute a search warrant in the residence of the defendants; that on October 9, 1945, the defendant, maliciously and without probable cause or any ground therefor, swore and caused to be filed in the Municipal Court of San Germán, a criminal complaint charg-

ing the plaintiff herein with the crime of aggravated assault and battery in that said policeman had assaulted and battered with his hands the complainant, strongly seizing her by an arm, pushing her, and introducing his hands in her bosom, causing her several scratches, and leaving her with great pain all over her body; that by reason of said complaint the plaintiff was arrested and had to give a bail bond; that on January 9, 1946, the plaintiff filed a motion in the Municipal Court of San Germán, in which she informed the court that she had made a mistake, since the policeman Ismael Rivera had not interfered with her in any way, and moved the court to dismiss the case, which was done; that the acts of the defendant subjected the plaintiff to public contempt, hatred, and discredit, and caused him intense moral pain, deep mental anguish and depression, and resulted in damages to him which amounted to $5,000.

The defendants answered and admitted the fact of the filing of the complaint by the defendant Eloísa Toro, but denied that said complaint was filed maliciously and without probable cause; that the said complaint was filed after the complainant had consulted an attorney; and that the complainant was protected by the advice of counsel. After a trial was held, the lower court rendered a decision adjudging the defendants to pay to the plaintiff ''$3,500 as principal, with interest thereon at the legal rate from the date of the judgment up to its total payment, plus costs, expenses, disbursements, and $300 as attorney's fees.''

The appellants have assigned several errors claimed to have been committed by the lower court, two of which are (1) ''that the District Court of Mayagüez erred in holding that the defendant acted with malice''; and (2) that it ''erred in holding that the defendant Eloísa Casiano was not protected by the advice of her counsel.''

The appellants urge that it is an established doctrine that in an action for malicious prosecution, the defendant is pro-

tected by the advice of counsel; that the acquittal of police-
man Rivera was not due to the fact that an ample, full, and
truthful exposition was not made but to the indisputable fact
that the plaintiff made a mistake as to the name of the police-
man; that in this case the element "malice" gives way to
the element "error" and that the very manner in which the
facts occurred shows the lack of malice.

The evidence offered in this case, in brief, showed that
the plaintiff together with detective Fraticelli and two other
police officers searched, under a warrant, the residence of
the defendant; that they found Mrs. Toro alone in the living
room; that she ran towards the bedroom and was followed
by detective Fraticelli; that once in the bedroom an argu-
ment ensued between Fraticelli and the defendant due to
the fact that he asked her for certain papers that she picked
up from the bed and placed in her bossom; that the other
policemen stayed outside of the room and did not see what
happened there but heard the argument; that the police offi-
cers, once the search was made without having found any
"bolita" or "bolipool" material, left the house at the same
time; that two days after the occurrence, the defendant,
claiming to have been assaulted and battered by one of the
policemen, visited Attorney García Yanguas and made a state-
ment to him, to the effect that she was battered by policeman
Ismael Rivera in a room of her house when he attempted to
seize from her something which she had in her bosom; that
said attorney advised her that she should file a complaint
against said policeman for aggravated assault and battery;
that García Yanguas prepared the complaint and handed it
to the defendant with instructions to swear it before the
Justice of the Peace of San Germán, which she did; that
on the day set for the trial, and while the defendant was in
court accompanied by her attorney, said attorney asked her
to point out to him the policeman who had battered her and
she pointed out Fraticelli instead of Ismael Rivera; that

they then realized that they had accused a different policeman and moved for the dismissal of the case, which was dismissed accordingly.

Regarding the above evidence, the lower court said: "As to the defense that the defendant acted under the advice of counsel, the court disregarded the same, as it thinks that the defendant did not make to Attorney García Yanguas a full, complete, and true disclosure of the facts of the case. The court has reached the conclusion that the defendant went to Attorney García Yanguas with the preconceived idea of filing a complaint against any of the police officers as a revenge for the execution of the search warrant."

The defendant-appellant introduced in evidence the testimony of Attorney García Yanguas, which we copy below:

"Q.—Will you please explain to the court what was your intervention in this case?

"A.—Well, I was in my law and notarial office—I spend part of the day in the offices of the Justice of the Peace and another part in my own office—and while I was in my law and notarial office the lady arrived accompanied by a young woman to ask my advice regarding facts that had occurred in San Germán.

"Attorney Freyre: According to her?

"Witness: According to her; facts which she stated had occurred in San Germán. She made an ample statement of the facts and after I heard her I told her: 'If the facts are just as you have stated, then I think that said policeman overstepped the functions of his office and you can accuse him if you want to."

Further on he testified as follows:

"Q.—Then what happened in the municipal court?

"A.—Upon reaching the court, I asked her to point out to me the policeman and she pointed out another policeman.

"Q.—Which policeman did she point out?

"A.—She pointed out Fraticelli. Then I told her: 'Look, that is not the policeman you accused. You accused policeman Ismael Rivera.' Then she raised her hands to her head and said, 'Oh! how shall we fix that?' I started to think what could be done. Then I talked with the judge and I explained to him what happened.

"Q.—And the policemen, where were they?

"A.—They were there, Fraticelli and this gentleman also, together in the office of the judge, all of us. Then I said to him: 'You have to dismiss the case. This case is against a different policeman.' Then he let me use the clerk's typewriter and there, quickly, and relying on what she told me, that she had made a mistake as to the name of the policeman which she had accused, I prepared for her a motion praying that the court, in view of said mistake, should order the dismissal of the case, upon the payment of costs. And then right there, in the presence of the clerk, she signed and verified the motion, and I signed as counsel and the case was dismissed."

 Any person who institutes or brings a criminal action against another who is not guilty of the crime charged, is responsible to said person for the damages suffered by him if the criminal action is instituted without probable cause, with malice, and is decided favorably to the defendant. Restatement of the Law of Torts, vol. III, p. 382. Malice may be express or implied but it is presumed where imputation of the commission of a crime is made to a stranger. *Casanova v. González Padín Co.*, 47 P.R.R. 461. In this case a charge of aggravated assault and battery was filed against the plaintiff by mistake. The plaintiff failed to make the proper efforts to ascertain the name of the supposed aggressor. She relied on information furnished to her by a spectator who was in a group of persons standing in front of her house when the search was made. The appellant, by means of a slight investigation and through reliable sources, might have ascertained the name of the person whom she intended to accuse. Under these circumstances, we have to assume that she acted maliciously. Regarding this particular, 34 Am. Jur., p. 735, § 51, states as follows:

"The failure of a person who has received information tending to show the commission of a crime to make such further inquiry or investigation as an ordinarily prudent man would have made in the same circumstances, before instituting a proceeding, renders him liable for proceeding without probable cause. One may not rely with-

out further investigation on representations of another where the information received is such as to put an ordinarily prudent and cautious person on inquiry, . . . ''

■ In order that the defense of acting under the advice of counsel may be successfully set up, it is necessary to prove clearly that a truthful, total, and full disclosure was made to the attorney whose advice was requested and that the complaint was filed after making the consultation in good faith. In *Vélez* v. *Bonelli,* 46 P.R.R. 27, it was held (copying from the syllabus) that the legal advice upon which a person relied in prosecuting another for theft can not afford him any protection in an action for damages brought against him for malicious prosecution, where it appears that the facts were not fully and truthfully disclosed to the attorneys who gave such advice, or where the advice was given relying on a state of facts which never existed, or where it was given after the filing of the complaint which gave rise to such action. And in Restatement of the Law, Torts, vol. III, p. 420, referring to this same question, it is said:

'' . . . Concealment of a fact which should be recognized as material or the statement of matter as being within the client's knowledge but of which he merely entertains suspicion or which as a reasonable man he should recognize as requiring further investigation, . . . destroys protection given by the advice of counsel . . . ''

There is no doubt that the defendant in the case at bar did not make an ample and full disclosure of the facts to Attorney García Yanguas, since she did not correctly inform him as to the name of her supposed aggressor. Therefore, the court did not err in holding that the defendant was not protected by the advice of her counsel.

■ As a third assignment, it is urged that the lower court erred ''in sustaining the complaint against Pascual Toro and the conjugal partnership, because neither the complaint nor the proven facts constitute a cause of action against them in favor of the plaintiff.''

The appellant's contention is not correct. There was evidence introduced by the plaintiff to the effect that Pascual Toro instigated, advised, and agreed with, his wife to file the criminal complaint. Said evidence was accorded credit by the lower court, which regarding this particular said: "The court has no doubt, in view of the evidence, that both defendants reached an agreement to file the criminal complaint against the plaintiff Ismael Rivera." The trial judge accorded full credit to the evidence introduced by the plaintiff and found that both Pascual Toro and his wife were liable for filing the accusation against the plaintiff. That finding is supported by the evidence and, since there is no showing of passion, prejudice, or partiality, we will not disturb it on appeal. That being so, the complaint states facts sufficient to constitute a cause of action against the defendant Pascual Toro.

The appellants contend that there is no cause of action as against the conjugal partnership. Such a partnership is an entity entirely distinct from the spouses who compose it. *Ex parte García,* 54 P.R.R. 478. It is not, therefore, liable for the damages caused by either of its members. However, when the spouse causing the damage has no private property or said property is insufficient, the claim may be enforced against the conjugal property. It is so provided by the Civil Code, 1930 ed., § 1310, which in its pertinent part reads thus:

" . . . However, the payment of debts contracted by the husband or by the wife, prior to the marriage, and that of fines and condemnations imposed on either of them, may be claimed against the partnership property, after covering the expenses, mentioned in section 1308, if the debtor spouse should have no private capital, or were it insufficient; but at the time of the liquidation of the partnership the payments, made for the specified causes, shall be charged to said spouse."

In this connection, Manresa in his *Comentarios al Código Civil,* 1904 ed., vol. 9, p. 633, referring to § 1410 equivalent to § 1310 of our Civil Code, says:

"The debts and obligations contracted before marriage and the fines and pecuniary penalties imposed during said marriage are chargeable to the debtor or responsible spouse. Payment should be made out of his or her own separate property.

"But it may happen that said separate property is insufficient, or that the debtor spouse has no such property, and there is, on the other hand, community property which as such, belongs to both spouses. The law foresees this and provides that in such a case the claim may be enforced against the conjugal property after the expenses mentioned in § 1408 have been covered, but on condition that at the time of the liquidation of the partnership any payments made by the debtor spouse for the causes specified shall be chargeable to him or her.

"This precept is so natural that, at first view, we can not but feel its justice. The partnership is not bound to pay; but legitimate interests are involved, there are creditors who should not lose their credits, evils or damages which should be repaired, or injuries which should be compensated, and the law, in the absence of separate property of the debtor or responsible spouse, and there being surplus partnership property, orders the proper payment, repair, or award out of the conjugal property, but it provides that at the right time the same shall be deducted from the share of said spouse."

█ 4. The next assignment relates to the insufficiency of the evidence.

We have made a careful study of the evidence introduced in this case and we think that the same is sufficient to support the findings of the lower court. There is no showing of passion, prejudice, or partiality. Hence, those findings should be upheld.

█ 5. As a last assignment, it is urged that the lower court erred "in awarding the sum of $3,500 as damages together with $300 as attorney's fees, said sum being excessive." The amount awarded is, in our judgment, excessive. The

judgment appealed from should be modified to reduce the award to the sum of $750 and, as thus modified, the judgment is affirmed.